(C.D. 2434)

CINDER PRODUCTS CORPORATION v. UNITED STATES

United States Customs Court, Third Division

(Decided March 3, 1964)

*Eugene F. Cochran* for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Harold L. Grossman*, trial attorney), for the defendant.

Before DONLON and RICHARDSON, Judges

RICHARDSON, Judge: The merchandise involved in this case consists of pumice stone, assessed with duty at 0.0425 cent per pound under paragraph 206 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, as pumice stone, unmanufactured, valued at $15 or less per ton. It is claimed that duty should have been assessed upon the dry weight of the merchandise rather than on a weight which included moisture.

From the official papers and from the statements of counsel at a hearing held at Providence, R.I., on October 14, 1963, the following facts appear:

The merchandise now before the court was part of a larger shipment, consisting of 15,556 cubic yards or 9,250 tons, having a net weight of 7,708 tons with a moisture content of 1,542 tons. The total dry weight was equal to 17,064,932 pounds. Of this amount, 16,125,900 pounds were granted free entry under paragraph 1823 of the Tariff Act of 1930, as added by Public Law 86–325, approved September 21, 1959, T.D. 54959, which provided for free entry of pumice stone, when imported to be used in the manufacture of concrete masonry products. The balance, consisting of 939,032 pounds, dry weight, plus 20 percent thereof, representing the moisture content, or a total of 1,126,838 pounds, was assessed with duty under paragraph 206, as modified.

No application for an allowance for moisture on customs Form 4317, as required by section 15.7(a) of the Customs Regulations, was filed. For this reason, counsel for the Government moved to dismiss the protest, citing *Socony Vacuum Oil Co., Inc.* v. *United States*, 44 CCPA 83, C.A.D. 641.

Section 507 of the Tariff Act of 1930 provides:

The Secretary of the Treasury is hereby authorized to prescribe and issue regulations for the ascertainment of tare upon imported merchandise, including the establishment of reasonable and just schedule tares therefor, but in no case shall there be any allowance for draft or for impurities, other than excessive moisture and impurities not usually found in or upon such or similar merchandise.

Section 15.7 of the Customs Regulations, issued under the above statute, provides:

(a) Application for an allowance for excessive moisture or other impurities under section 507, Tariff Act of 1930, shall be made on customs Form 4317 and filed with the collector of customs within 10 days after the report of weight has been received by him.

(b) The collector shall cause such investigation to be made as may be necessary to determine whether or not the merchandise contains excessive moisture or other impurities not usually found in or upon such or similar merchandise, together with the amount thereof, and, if necessary, may refer the application to the appraiser for such determination.

(c) If the collector is satisfied from the reports received that the claim is valid, due allowance shall be made in the liquidation of the entry.

It was pointed out in *Socony Vacuum Oil Co., Inc.* v. *United States*, *supra*, that section 507 clearly imposes a duty upon a nonimportation, such as moisture and impurities usually found in or upon such or similar merchandise, and it was held that no allowance could be granted for excessive bottom sediment and water in crude petroleum where no application for such allowance had been filed with the collector as required by section 15.7. In the course of the opinion, the court stated (pp. 89–90):

In the instant case, Congress, in section 507, has in effect recognized that certain portions of importations are apt to be worthless and that, therefore, no duty should be imposed upon said portions. The right to bring such portions duty-free within the bounds of the United States is a qualified privilege, however, subject to, among other things, proper regulations promulgated by the Secretary of the Treasury.

\*      \*      \*      \*      \*      \*      \*

\* \* \* It is to be noted that neither section 507 nor section 15.7 requires the collector to make or cause to be made an investigation to determine the quantity of excessive moisture and/or other impurities in the importation. When section 15.7 is read as an entity, it is evident that the collector is required to cause such investigation to be made only after an application for allowance has been made by the importer as provided in section 15.7(a). Section 15.7 apparently leaves to the importer the task of determining whether or not the importation is of such a nature as to warrant the filing of an application for allowance. \* \* \*

It may be that, in the instant case, the importer expected that all of the pumice stone would be used in the manufacture of concrete masonry products and would, therefore, be free of duty. However, it was aware of the fact that the merchandise contained moisture, as is indicated by the bill of lading. Since an allowance in duty for such moisture is a qualified privilege, plaintiff cannot claim that privilege in the instant case, since it has not complied with the regulations issued by the Secretary of the Treasury and has shown no reason why it could not have done so.

For the reasons stated, the protest in this case is dismissed. Judgment will be entered accordingly.